Do I always wear a hat to court? Unless I forget it, yes. I wore it to the State Supreme Court. I wear it to the State Supreme Court. I tried that. They made me take it off. Did they? They did. This State Supreme Court, Washington State? No, the United States Supreme Court. No, this wasn't the United States. This was just the Washington State Supreme Court. Yeah, the United States Supreme Court is backwards. Etiquette isn't part of their protocol, perhaps? I don't know. I don't know. They're living in another world. We had a famous woman in L.A. who was a defense attorney, and she always came in with elaborate evening gowns and big hats. With feathers on them. Huh? Gladys Towles roots. Gladys Towles roots. I don't have any evening gowns. Why don't you Google her? You'll find out. And you'll get yourself some bigger hats. If I got bigger hats, you couldn't see me at all. It's all right. See that? Then you could just have an aide to come in with a little box. You'd stand up. I nearly need the box anyway. Yeah. It's all right. Are we ready? Yes. Yeah. May it please the court, counsel. I'm Rebecca Koffel. I represent Les Hagel in this matter. And first I need to let the court know that subsequent to the filing of our brief, Mr. Hagel received supplemental security income on a favorable decision. The decision is dated 3-13 of 2008, and the onset date was April 12th of 2006, the date that Mr. Hagel filed that supplemental security income claim. Can't go back before it because it's strictly an SSI claim. So does this mean he's going to have it in the future? This means he has it from the date of April 12th of 06 on. So this changes the complexion of this case. This is now just for the closed period. What years are now covered? It would be covered from the date that he filed this claim, which was, I believe, May 17th of 2000 to April 12th of 2006 would be the period that would be covered in this claim. So how much money is he getting? How much money would he have received? For that period of time? Yeah. Do you want me to do the math? I can. He owns – well, actually, I can't. He's receiving at the present time approximately $630 a month on SSI. SSI changes on a regular yearly basis, so I can't – Well, what was it then? I don't know. I want to say about $590, but I'm not sure. In 2000. Did he have any new evidence? Your Honor, he was found disabled. I'm reading from the decision, which was by the administrative – a different administrative law judge in Spokane. He's found to have the following severe impairments, coronary artery disease, with a history of cardiovascular bypass surgery, history of chronic abdominal gastrointestinal problems, and depressive and personality-based disorders. That is essentially the same issues that we have here. The cardiovascular, too. That is in a way that – he had the surgery, he had bypass surgery at one point, and that's part – and that was during the time of this claim. That isn't subsequent to it. It certainly struck me, reading this, his main problem was his personality. And the main problem is the personality disorder, Your Honor, and that's why I in my brief to cite the definition in the DSM-IV of a personality disorder, I would add to that definition briefly, if I could, from a psychiatrist in New York who said that a personality disorder is – are people that your parent – your mother warned you about, unless, of course, they were your mother. The personality disorder people – disorder. My mother was great. Go ahead. I mean, so what are you getting with that statement? Well, personality disordered individuals are people who are very difficult to be around. They can be people who not only are argumentative and not argumentative. We know all this. We just didn't fall off a turnip wagon, you know. Then I shouldn't have to go through it. You shouldn't have to go through it, yeah. And judge – the administrative law judge that heard these cases and made the judgment, both, Your Honors, shouldn't have dismissed the personality disorder as a non-severe impairment. The Court is well aware that a non-severe – Step 2, the severe impairment is a – There was all that talk about malingering, too, from his own doctor. There's almost no talk about malingering. There's a couple of issues on malingering. One was with Dr. Everhart, which was a consultative evaluation in 2004. Dr. Everhart did find malingering or possible malingering, a suggestion of malingering, on the TOMS as well as in some of the other instruments. I would note that this is after this individual has been trying to get disability for a number of years. And the Court needs to understand, too, that during the time he's getting disability, he is living on Washington State's DSHS, Department of Social and Health Services, General Adult Unemployed slash GAX. And don't ask me what GAX means, because I don't know. That is $339 a month. That was $339 a month in 2000. It's still $339 a month. Mr. Hagel lived on that. That's what he was living on. That also gives him Medicaid. But that's what he was surviving on. He has, goes on a regular basis at the request of DSHS to psychological psychologists for, and they're in the record, for, and that do evaluations of him. Those are regular evaluations to make sure that he continues to be disabled. Unfortunately, by the time he gets to Dr. Everhart, who is a consultative evaluation that is requested through the Social Security Administration, he's getting desperate. That would be one way to look at it. The other is, however, even if you consider that there's a possibility of memory malingering, which is what the TOMS test is, strictly memory malingering, and that would be that he's trying to present that he has more memory problems than he actually, in reality, does, even with that, Dr. Everhart finds a number of, areas in which Mr. Hagel is impaired. She finds moderate impairments and a marked impairment. Those impairments are presented to the vocational expert at the second hearing. Dr. Tom Merland was the vocational expert at that point, and I would like, if I back up to reserve two minutes, if I could. Tom Merland found, when he's presented with Dr. Everhart's limitations, that there was no work available. And that is at pages 516 and 517 of the excerpts of record. Your Honor, this is, as I indicated, strictly a closed period case at this point. This is a very disabled man, emotionally disabled. He's not somebody you're going to want to have work for you because of these limitations and because of his characteristics. And all he is asking for at this time is that that closed period be recognized, that he was disabled during that period, as the subsequent administrative law judge recognized that he was disabled in his decision this year in March. Give me the dates of that closed period again. The closed period would be from May 17th of 2000, which is the date he originally applied for SSI, to, where did I say, oh, April 12th of 2006. That would be the closed period. That would be the period of time we would be looking at for this claim. I have one question to ask. You did not submit to the district court Dr. Ashley's opinion. I don't think Dr. Ashley, I didn't submit anything to the district court, Your Honor. I was not the attorney at that point. Well, was that just an oversight by? I do note that the district court in its decision did comment on page 11 of its decision, which is tab 23 of the record, that they did comment on Dr. Ashley. But, Your Honor, that doesn't make any difference in this case. I think I'm relying primarily on the history of his personality disorder and on the finding by the Tom Merland at the second hearing that there were no jobs available. The district court did refer Dr. Ashley's opinion? It referred to her opinion briefly on page 11. It goes into a discussion of her. Thank you, Your Honor. I would reserve the minute and 17 seconds I have left. Okay. Good morning, Your Honors. My name is Tom Elsberry. I'm here on behalf of the commissioner. I guess I would first note the closed period that we're looking at, and we're always looking at a closed period, is not until April 06. It's actually until January 2005, which is the date of the ALJ's decision. That's the only period for which evidence was reviewed. What's the period? It's from the alleged onset date to January 28, 2005. That's the date of the ALJ's decision. Anything that happens subsequent is not addressed by the facts. January 28, 2005. Correct. That's the date of the ALJ's decision. Any evidence after that was not considered by the ALJ and is, in fact, not a part of this record and not before the court for review. I'm not sure of what changes have occurred. I can't respond to any changes that may have occurred subsequent to that date. Moreover, the allegation that there's the same impairments, therefore they must have been disabling in the past, runs contrary to the record we have. The very treating physician who treated Mr. Hagel for his cardiovascular opined in August of 2004, within normal limits, he's fine. Dr. Ashley, the other treating physician, who was addressed briefly by the district court, noting incidentally that the ALJ properly addressed Dr. Ashley's opinion, Dr. Ashley also concurred with Dr. Williams, saying not disabled by his physical limitations or impairments, his cardiovascular is not what was at issue. And, in fact, it was not what was briefed by Mr. Hagel in this case. The sole issue raised by Mr. Hagel was the issue of mental health impairment or whether there's a severe mental impairment. There's much made of the personality disorder. Everyone agrees there is a personality disorder. The medical expert concurred. And most of the physicians, consultative, examining and non-examining, all agree there's a personality disorder. But nobody found it severe, or at least based on objective evidence or supportive clinical testing. The ALJ addressed all those opinions and specifically addressed the issue of mental health impairment. A personality disorder, despite a diagnosis, does not equal a severe impairment. You can look at the definition of personality disorder and you can look at the multiple variations of it, but you have to reach a certain point where it impacts your ability to perform your vocational abilities. That's not within the definition. That's where the examinations come in, and there has to be evidence to support that. Is there any evidence about his vocational abilities? Related to personality disorder? Well, yeah, the whole case. Yes, there are. On the physical, which are not at issue here, that was accounted for in the ALJ's RFC. And on the mental, yes, there are. He has no limitations as a result of mental impairment. That's inherent in the finding of no severe mental impairment. I think it's important to note that a finding of mild limitations from a mental impairment this Court has held is not a severe mental impairment. It is a non-severe mental impairment. The expert found some jobs she said he could do. Yes, indeed. Several jobs that he could do. With the RFC that was found by the ALJ based on acceptable medical evidence. What you really have here is a conflict between the doctor who did not examine him and who doesn't give the clearest evaluation anyway, and then the two examining physicians, and then the treating physician. And it seems to me that if you go with the treating physician and the examining physician, he is mentally disabled. And one can certainly think that mental disability is pretty hard to diagnose, and it's awfully hard to diagnose from just reading a medical record. That's exactly true. I would first note that that's the ALJ's duty. When there's conflicting evidence, which you note and I have noted as well, it's the ALJ's job to weigh and evaluate the conflicting medical evidence. When you mention the treating physician, I'm assuming you're speaking of Dr. Ashley. Yes. Dr. Ashley, her degree of treatment I think is illustrative. She treated him seven times over, I think it's six years. Once in 98, no mental impairment. Twice in 2000, diagnosis of depression and anxiety based solely, no objective testing, based solely on his subjective representations, which the ALJ found not and appealed. In 2001, no diagnosis of depression or anxiety. No visit in 2002, no visit in 2003. 2004, no exam, to whom it may concern later, reiterating the assertion of depression and anxiety, no basis for that. And then in 2004, applied mildly to moderately depressed, again, with no basis for presenting that opinion. And the ALJ has properly dismissed his opinion that has no objective testing, is in a conclusory form and has no objective basis for its presentation. And then I would say finally in September of 2004, there was no diagnosis of depression or anxiety whatsoever from Dr. Ashley. So her treatment of Mr. Hagel has been spotty. The only diagnosis of depression and anxiety comes from his representations of such, that he's having a hard time this way or he's anxious that way, but not based on a medical mental examination. So the ALJ has properly weighed and evaluated that opinion according to the proper standards of the regulations and Ninth Circuit law. And you've got the two doctors who examined him. Dr. Arnold and Dr. Everhart. And, incidentally, couched on the other side of that is Dr. Bailey. Dr. Bailey also found evidence of malingering. Dr. Everhart didn't just find evidence of or suggestion, she actually diagnosed malingering. And not just based on that. You know, with help, if you would speak a little more slowly. I'm sorry. You're a master of the facts, but you would go slowly. Okay. And it seems to me at least a couple of the doctors, when they said malingering, they said, well, maybe it's a cry for help. One doctor. That would be Dr. Arnold on his very first examination. And he didn't say it may be a cry for help. Actually, there were twofold. There were two problems with that examination. The MMPPI was invalid and suggested malingering, but he didn't go there. And then there was a subsequent test that also suggested exaggeration, and Dr. Arnold found, but it's probably characteristic of his personality disorder and thus not evidence of malingering. That's the point where the one doctor found not malingering. Dr. Everhart subsequently diagnosed malingering based on four tests, and each of the four tests there was evidence of malingering. And then Dr. Bailey on the front side, I believe in 2000, also noted the MMPPI was invalid and there was evidence of malingering and gross exaggeration in that evaluation as well. It was part of the basis for the LJ's finding that his subjective reporting was not credible, which was instrumental in his assessment of Dr. Ashley's opinion because it was based primarily on subjective. Dr. Arnold, as well, who in the first examination in May 2001 did have some objective testing. The remaining four tests, no evidence of objective testing. His diagnoses changed. He diagnosed anxiety once in May 2001, never diagnosed it again. Didn't diagnose depression at that point, but did in 2002 in June and December, and then in 2003 dropped depression. Just said depressive symptoms in remission. So his diagnoses continually change. Even his diagnosis of personality disorder changes each time. It's never consistent. And more importantly, well, I was going to say he doesn't assess limitations, but more accurately stated, he assesses limitations that are not supported by his narrative report. Say that again. He assesses limitations. He assesses limitations that are not supported by his narrative report. In fact, for example, he finds anxiety disorder in May 2001, and there's nothing in the discussion, the analysis, or the narrative summary that indicates an anxiety disorder. In summary, I would say the ALJ, I could not help but be impressed with the specificity with which he addressed each one of the opinions, she addressed each one of the opinions by Dr. Arnold, by Dr. Ashley, Dr. Bailey. She went meticulously through the medical record and gave specific and legitimate reasons for rejecting the degree of limitation, which is the standard required both under our regulations and under this Court's guidance as well. Okay. Are there any other questions? Thank you very much. Dr. Everhart, she's a consultative evaluator. She does find memory malingering. Actually, she says malingering results of TOMM, which is test of memory malingering, suggest malingering. However, Dr. Everhart goes on to find a moderate limitation in the ability to carry out detailed instructions, moderate limitation in the ability to maintain attention and concentration for extended periods, a moderate limitation in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary limitations, a moderate limitation in the ability to complete a normal work day and work week without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number of length and length of rest periods, and a marked limitation in the ability to be aware of normal hazards and the appropriate precautions. Those are limitations of the ability to work. Those are a base. Those are not severe impairment. Your Honor, I believe under the definition of severe, those do. A severe impairment is simply an impairment. It's a de minimis test based on whether or not this condition affects the person's ability to work. Mr. Hagel's personality disorder, which is found by Dr. Everhart in her report, looking at page 329 of the excerpt of record, she finds that he has a personality disorder. As does Dr. Arnold. Their personality disorder is NOS, not otherwise specified. You look at the DSM-IV. It lists for each different kind of personality disorder. It lists a series of things that they are supposed to, an individual would need to have that diagnosis, obsessive compulsive, schizoaffective disorder. An NOS personality disorder is one that has a lot of factors but doesn't have all of the factors for any given kind of personality disorder. They're going to vary from time to time. Mr. Hagel definitely has a personality disorder. Likewise with the depressive disorder. Depression waxes and wanes. People are depressed severely one day, doing pretty good the next. A month from now we're doing fine, and the next month they're in bed and can't get out. Mr. Hagel has depression. He has a personality disorder. It impairs his ability to work. Regarding the closed period, counsel is correct in a sense. However, had the judge at the end of her decision in January of 2005 found Mr. Hagel disabled, he would have been disabled through the period in which to which the judge in this year found him disabled, and that would have been April of 2006. If there are no further questions, I have nothing further to say. This individual is disabled. The record is clear on that. We don't have to even go into the other ones. We can rely on the consultative evaluation by Dr. Everhart. Thank you. Thank you.
judges: Pregerson, Hall, Noonan